**Gregory BOYD, Appellant,**

**v.**

**STATE of Alaska, DEPARTMENT OF COMMERCE AND ECONOMIC DEVELOPMENT, DIVISION OF OCCUPATIONAL LICENSING, Appellee.**

No. S–8568.

Supreme Court of Alaska.

May 28, 1999.

Brent R. Cole, Marston & Cole, P.C., Anchorage, for Appellant.

Gayle A. Horetski, Assistant Attorney General and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

The State Division of Occupational Licensing denied Gregory Boyd's application for renewal of his hunting guide license on the ground that a $2,500 payment he had previously made as a condition of a suspended imposition of sentence for a regulatory violation was a "fine" under AS 08.54.605. While we affirm the Division's denial, we also hold that Boyd may request modification of his SIS conditions.

## II. *FACTS AND PROCEEDINGS*

From 1986 to 1996 Gregory Boyd was a registered hunting guide in Alaska. Boyd claims to have received up to seventy percent of his annual income from guiding clients on big game hunts in Alaska. His license, issued by the Alaska Department of Commerce & Economic Development, Division of Occupational Licensing,[1] expired on December 31, 1996.

During 1996 Boyd pled "no contest" to two violations of AS 16.05.407(a) for failing to provide a licensed assistant guide to certain

1. *See* AS 08.54.600.

non-resident sheep and bear hunters. Boyd had hired an assistant guide who had represented to Boyd that he was licensed, but who had failed to pay the required licensing fee and to obtain updated CPR and First Aid cards.

Under the terms of a negotiated agreement between Boyd and the Palmer District Attorney's Office (through Assistant District Attorney Dave Berry), Boyd received a one-year suspended imposition of sentence (SIS) on both of the counts. The agreement provided that the probationary periods for both counts would run consecutively. The sentencing judge required that Boyd make two payments of $2,500 as a condition of the SIS and handwrote "fines concurrent" and "[f]orego [the] Spring '97 Bear hunt" on the sentencing form.

In January 1997 Boyd began filling out his application for license renewal. In the application, the Division asks potential guides to disclose whether they have been convicted of a state hunting or guiding regulation violation "for which [they] were fined more than $1,000." Boyd's attorney, Brent Cole, called Assistant District Attorney Berry to inquire as to whether the $2,500 payment would be a barrier to Boyd's license renewal and, if so, whether the District Attorney's Office would agree not to oppose a restructuring of Boyd's SIS conditions to avoid such a result. Cole wrote a follow-up letter to Berry on January 8, 1997, stating:

> This letter will confirm our understanding that Mr. Boyd's payment to the court of $2,500 under the terms of his suspended imposition of sentence is not considered a fine under 12.55.035 but rather a condition of the suspended imposition of sentence. If I am incorrect in the assessment please contact me.

In light of this understanding, Boyd sent his renewal application to the Division in February 1997, asserting that he had not been convicted of a state hunting or guiding regulation violation for which he was fined more than $1,000.

On March 24, 1997, the Division sent Boyd a letter informing him that his registered guide license would not be renewed:

According to Sec. 08.54.605(1)(A), a person may not receive or renew a registered guide license, master guide license, class-A assistant guide license, assistant guide license, or transporter license if the person has been convicted of a state hunting, guiding, or transportation services statute of [sic] regulation within the last five years of which the person was fined more than $1,000 or imprisoned for more than five days.

Boyd sought an immediate hearing to review the Division's denial of his license renewal. The administrative hearing officer for the Division found that the $2,500 payment *did* constitute a fine and affirmed the agency's decision.

On August 6, 1997, Boyd filed a notice of appeal to the superior court, as well as an emergency motion for injunctive relief seeking a stay of the administrative order and immediate issuance of his license. The superior court granted Boyd's request for a stay and directed the Division to issue Boyd a license. The State appealed the ruling to this court; we declined to remove the stay. Boyd thus received a guide license for the 1997 hunting season effective August 15, 1997.

After hearing Boyd's substantive appeal from the administrative decision, the superior court affirmed the actions taken by the Division. Boyd appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

█ We review questions of law not involving agency expertise under the so-called "substitution of judgment" test.[2] "Application of this standard permits a reviewing court to substitute its own judgment for that of the agency even if the agency's decision had a reasonable basis in law."[3]

### B. *Boyd's Payment Constitutes a "Fine" under AS 08.54.605.*

█ Boyd claims that his $2,500 payment cannot be a fine under AS 08.54.605[4] because a court must actually impose a sentence in order to require payment of a "fine." Boyd relies on AS 12.55.035, which provides that, "upon conviction of an offense, a defendant may be sentenced to pay a fine as authorized in this section or as otherwise authorized by law."

But in so arguing, Boyd ignores the statutes governing SIS and probation: AS 12.55.080–.100. Subsection .100 specifically authorizes fines as conditions of probation:[5]

(a) While on probation and among the conditions of probation, the defendant may be required

(1) to pay a fine in one or several sums;

(2) to make restitution or reparation to aggrieved parties for actual damages or loss caused by the crime for which conviction was had . . . .

Indeed, given that courts may go so far as to require imprisonment as a condition of SIS,[6] Boyd's interpretation of § .035 as precluding payment of a fine except when pursuant to an actual sentence seems untenable.[7]

Boyd's own counsel and the assistant district attorney acknowledged at the sentenc-

---

**2.** See *Nyberg v. University of Alaska,* 954 P.2d 1376, 1378 (Alaska 1998) (citing *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992)). Both parties agree that this appeal raises questions of law that do not involve agency expertise.

**3.** *Hammer v. City of Fairbanks,* 953 P.2d 500, 504 (Alaska 1998) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987)).

**4.** AS 08.54.605 denies license renewal to any person convicted of "a state hunting, guiding, or transportation services statute or regulation within the last five years *for which the person was fined more than $1,000* or imprisoned for more than five days." AS 08.54.605 (emphasis added).

**5.** Although § .100 refers to "probation" rather than suspended imposition of sentence, the latter necessarily entails that the defendant be placed on probation. *See* AS 12.55.085.

**6.** *See* AS 12.55.086.

**7.** The sentencing judge's handwritten notation—"fines concurrent"—on Boyd's sentencing hearing record is also indicative of the court's understanding that Boyd was paying a fine.

ing hearing their understanding that the payment constituted a fine:

> Cole: The negotiated disposition is this: Mr. Boyd will receive a suspended imposition on each count ... and the suspended impositions will run consecutively, so the idea is that he will be on probation for three years, essentially. There will be no jail time imposed. *There will be a $5,000 fine with $2,500 suspended.*
>
> ....
>
> Berry: Yes, correct. Each count, but *just one fine.*

(Emphasis added.)

Moreover, this court has previously treated such payments as "fines" regardless of the particular language used by the sentencing court. In *Brown v. State*,[8] the superior court imposed a sentence of two years' probation on a defendant who pled nolo contendere to a charge of polygamy and required the defendant to pay $3,000 as a condition of probation.[9] On appeal, this court concluded that "the sentencing court ... was empowered to make payment of a fine a condition of probation even in the circumstance where the crime is only punishable by imprisonment."[10] In so holding, this court implicitly found that the $3,000 payment was a "fine," even though the sentencing court did not use the word "fine" in its order of probation.[11]

C. *Alaska Statute 08.54.605 Does Not Violate Boyd's State or Federal Equal Protection or Due Process Rights.*

■ Boyd argues that AS 08.54.605 violates the equal protection clauses of the United States and Alaska Constitutions because it denies license renewals to those convicted of violating *state*, but not *federal*, hunting and

guiding statutes. Yet the case on which Boyd relies, *Maeckle v. State*,[12] undermines his equal protection argument. In *Maeckle*, the court of appeals held that it was not discriminatory to impose more severe penalties for guiding without a license than for practicing other professions without a license.[13]

Just as the *Maeckle* court rejected an attempt to identify the relevant class for equal protection purposes as "persons practicing their profession without a license," we reject Boyd's attempt to define the class as "persons convicted of hunting offenses who arguably received a fine greater than $1,000." Those convicted of violating *state* hunting and guiding laws, such as Boyd, have committed a different crime than those convicted of parallel federal offenses.

D. *Under the Doctrine of Equitable Estoppel, Boyd Should Have a Chance to Modify His SIS Conditions to Retain His License.*

■ Boyd argues that the Division was estopped from rejecting his application for license renewal because an assistant district attorney assured Boyd that the $2,500 payment was not a "fine" within the meaning of AS 08.54.605. To the extent that Boyd relied on the assistant district attorney's comments in deciding not to request modification of his sentence, we agree.

■ To invoke equitable estoppel against a state entity, a party must show that: "(1) the governmental body assert[ed] a position by conduct or words; (2) the private party act[ed] in reasonable reliance thereon; (3) the private party suffer[ed] resulting prejudice; and (4) the estoppel serves the interest

---

8. 559 P.2d 107 (Alaska 1977).

9. *See id.* at 108.

10. *Id.* at 110.

11. Similarly, in *Ashton v. State*, 737 P.2d 1365 (Alaska App.1987), the court of appeals held that the lower court had erred in forcing a defendant to make a $2,100 payment as a special condition of probation without considering the defendant's earning capacity. *See id.* at 1365–66. The court

noted that its holding would be the same regardless of whether it characterized the payment as a "fine" or as restitution. *See id.* at 1366. The court offered no third alternative for how to characterize such a payment.

12. 792 P.2d 686 (Alaska App.1990).

13. *See id.* at 689.

of justice so as to limit public injury." [14]

We acknowledge that Assistant District Attorney Berry did not have the authority to change the laws of Alaska as written; his written assurances to Boyd did not alter the fact that Boyd's payment is a "fine" under AS 08.54.605.[15] Indeed, given that Berry's statement referred to AS 12.55.035 rather than 12.55.100, it was not technically inconsistent with the Licensing Commission's rejection of Boyd's renewal application.

Still, Berry's assurances to Boyd were not isolated misstatements of the law; rather, they were made in direct response to a request from Boyd's attorney that the District Attorney's Office not oppose modification of Boyd's SIS conditions so that Boyd would not lose his license. Berry communicated to Boyd's attorney that such a modification was unnecessary because Boyd's license would not be revoked because of the payment. Berry was the assistant district attorney assigned to the case and, as such, had authority to make statements with respect to the scope and consequences of a plea agreement between the District Attorney's Office and a defendant.[16] The District Attorney's Office, by way of Berry's statement, therefore effectively agreed that the conditions of Boyd's SIS should not affect Boyd's license. To that extent, Boyd reasonably relied on Berry's assurances in deciding not to pursue the remedy he initially contemplated: a stipulated modification of his SIS conditions.

Although the District Attorney's Office could not force the Division to ignore § .605 as written, the office did have the authority to agree to a restructuring of Boyd's sentence that would allow him to avoid the collateral consequences of § .605. To deny Boyd the opportunity to seek modification of his SIS conditions would be to contravene the intent of both Berry and the sentencing court. During plea negotiations, both understood that Boyd would forego only the spring 1997 bear hunt and that he would keep his license unless he committed another offense within a three-year probationary period.

If Boyd had known that his agreement with Berry would have precluded him from renewing his license for five years, Boyd could have requested a modification of the conditions of his SIS under AS 12.55.085, which allows the sentencing court "at any time during the period of probation" to "revoke or modify its order of suspension of imposition of sentence." [17] Because Boyd detrimentally relied on Berry's statement, he should have the opportunity to request that the sentencing court modify his SIS conditions pursuant to AS 12.55.085.[18]

## IV. CONCLUSION

Because we hold that Boyd's payment constitutes a "fine" under AS 08.54.605, we AFFIRM that part of the superior court's ruling. But because Boyd reasonably relied on the assistant district attorney's statement that Boyd would not lose his license based on his SIS conditions, we also hold that Boyd may request modification of his SIS conditions pursuant to AS 12.55.085, notwithstanding any statute of limitations otherwise imposed on such modification.

---

**14.** *Crum v. Stalnaker*, 936 P.2d 1254, 1256 (Alaska 1997) (citing *Wassink v. Hawkins*, 763 P.2d 971, 975 (Alaska 1988)).

**15.** "[T]he mere expression of an erroneous opinion on a matter of law raises no estoppel." 28 Am.Jur.2d *Estoppel and Waiver* § 47 (1966).

**16.** Cf. *Surina v. Buckalew*, 629 P.2d 969, 980 (Alaska 1981) (holding that assistant district attorneys act as "agents of the state" when promising grants of immunity).

**17.** AS 12.55.085(d).

**18.** The record is unclear as to whether Boyd's probationary period was two or three years. If it was for two years, it would have expired on December 2, 1998. Although a defendant may normally only request SIS modification during his probationary period, *see* AS 12.55.085, the circumstances of this case justify tolling of the period to allow Boyd to request modification. *See Smith v. Thompson*, 923 P.2d 101, 105 (Alaska 1996) (allowing equitable tolling when defendant has notice, did not suffer prejudice, and when plaintiff acted reasonably and in good faith).